IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Crim. No. 4:20-cr-274-SDJ-KPJ-2 |
| § | |
| TERRY WAYNE LEE (#2), § | |
| § | |
| Defendant. § | |
| § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Terry Wayne Lee's ("Defendant") Motion to Suppress Evidence (the "Motion") (Dkt. 78), wherein Defendant seeks to suppress evidence obtained during a search of his recreational vehicle (the "RV"). The Government filed a response in opposition to the Motion (Dkt. 80), to which Defendant filed a reply (Dkt. 85). The Motion was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636. *See* Dkt. 79. On January 18, 2022, the parties appeared for a hearing on the Motion (the "Hearing"), during which Officer Bryce Kennedy ("Officer Kennedy") of the Cooke County Sheriff's Department testified on the Government's behalf. Upon consideration, the Court recommends the Motion (Dkt. 78) be **DENIED**.

**I.   BACKGROUND**

On December 1, 2019, officers with the Cooke County Sheriff's Department entered a house located at 2825 FM 678, Gainesville, Texas, (the "House") to investigate a drive-by shooting that occurred earlier that evening.[1] *See* Dkt. 78 at 1. The House is owned by Defendant and his

---

[1] The Motion and the Affidavit for Search Warrant state the officers were investigating a "Deadly Conduct offense." *See* Dkt. 78 at 1; Dkt. 85-1 at 5. Officer Kennedy testified during the Hearing that officers were investigating a drive-by shooting.

1

sister, Twila Nelson ("Ms. Nelson"); Ms. Nelson resides in the House with her children, Ashley Nelson and Cole Smith. *See* Dkt. 85-1 at 4; Dkt. 78 at 2. Defendant resides in the RV, which is parked on the same lot as the House. Dkt. 85-1 at 4; Dkt. 78 at 2.

According to Officer Kennedy, officers entered the House to investigate the drive-by shooting. While in the House, officers observed, in plain view, indications of illegal drug use, including a digital scale with white crystal residue and a plastic bag containing the tobacco remnants of cigars (which Officer Kennedy testified is indicative of marijuana use). *See* Dkt. 85-1 at 5–6. Additionally, one bedroom emitted a "strong odor of marijuana" and Ashley Nelson informed the officers there was marijuana in the garage. *See id.* at 5–6.

The next day, on December 2, 2019, Officer Kennedy applied for and obtained a search warrant (the "Warrant") based on the officers' observations at the House from the previous evening. The Warrant provides:

> [Y]ou are commanded to enter the suspected place, and to there search for the following personal property described in said Affidavit and to seize and arrest the same and bring before me the following:
>
> Methamphetamine, marijuana, drug paraphernalia, any notes, ledgers, books, computers, cell phones, video recordings, and United States Federal Reserve Notes related to proceeds from illegal drug sales[.]

*See* Dkt. 85-1 at 1. The Affidavit for Search Warrant (the "Affidavit") identifies the suspected place as follows:

1. There is in Gainesville, Cooke County, Texas, a suspected place, premises and curtilage described as follows: A single family dwelling, located at 2825 FM 678 Gainesville, TX 76240. The dwelling is blue in color, with white trim and a grey composite roof. The dwelling has a handicap ramp that goes up to the front door, which faces south. There are four white pillars that hold up the awning above the front porch. There are two garage doors on the residence that are both white in color. There is another door on the south east [sic] side of the residence that is also white in color. There are three vehicles in the driveway; 2 grey passenger cars and a maroon passenger car. There is a very large tree in the front yard, due south of the handicap ramp leading to the front door.

2. There is at said suspected residence multiple vehicles described as follows; 2 grey passenger cars and a maroon passenger car. Additionally, there is a recreational vehicle on the property, north of the residence.

*See id.* at 4. Officer Kennedy testified the Affidavit broadly described the suspected place to encompass the entire property, including the RV, because drugs could have been concealed anywhere on the property.

According to Officer Kennedy, he believed the RV was associated with the House and part of the same property. He testified the RV was parked approximately thirty (30) feet from the House and did not have its own driveway, mailbox, or address. He further testified that the RV was not fenced off from the House and did not display "No Trespassing" or "Do Not Enter" signs. Video evidence presented during the Hearing showed that, while a portion of the yard behind the House was fenced, there was no fencing or other impediment fully separating the House from the RV. Officer Kennedy also testified that mail addressed to Defendant was found in the House.

Officer Kennedy testified he was not sure, at the time of execution, whether the RV was operational. Defendant contends in his briefing, however, that "[t]he RV was completely immobile; the engine was not functional; and the various detritus and collected flotsam and jetsam surrounding the RV made it incapable of being used on a highway." *See* Dkt. 85 at 4. Defendant also asserts that the RV "was being used as a home and was hooked up to utilities as a dwelling." *See id.*

Officers executed the Warrant on December 2, 2019. *See* Dkt. 78 at 2; Dkt. 85-1 at 2. Officers seized methamphetamine, drug paraphernalia, firearm magazines, and live ammunition from the RV, along with other items found elsewhere on the property. *See* Dkt. 85-1 at 3. Defendant was arrested and indicted for violations of 21 U.S.C. § 846 (Conspiracy to Distribute

3

or Possess with Intent to Distribute or Dispense Methamphetamine) and 18 U.S.C. § 922(g) (Possession of Ammunition by a Prohibited Person). *See* Dkt. 1.

## II. LEGAL STANDARD

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Thus, under the Fourth Amendment: (1) all searches and seizures must be "reasonable"; and (2) a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set forth with particularity. *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citing *Payton v. New York*, 445 U.S. 573, 584 (1980)). Generally, a warrant must be obtained prior to conducting a search and seizing evidence; warrantless searches and seizures are presumptively unreasonable. *Id.* (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). However, because the "ultimate touchstone of the Fourth Amendment is 'reasonableness' . . . the warrant requirement is subject to certain reasonable exceptions." *Id.* (internal citations omitted).

Evidence obtained through an unreasonable search may be suppressed under the so-called exclusionary rule. *See Herring v. United States*, 555 U.S. 135, 139 (2009) ("Nonetheless, our decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."). However, "suppression is not an automatic consequence of a Fourth Amendment violation." *Id.* at 137. "Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Id.* The exclusionary rule only applies if suppression would appreciably deter future violations of the Fourth Amendment. *See id.* at 141

4

("[T]he exclusionary rule is not an individual right and applies only where it results in appreciable deterrence" and "the benefits of deterrence must outweigh the costs." (cleaned up)).

### III. ANALYSIS

#### A. Arguments of the Parties

Defendant argues the RV was searched "without a valid search warrant and without probable cause . . . ." Dkt. 78 at 3. Although Defendant does not contest the Warrant was properly issued, Defendant argues the RV was not particularly described in the Warrant or the Affidavit and, therefore, was not properly within the scope of the Warrant. *See id.* at 4–5. Defendant further argues the officers did not have probable cause to search the RV; thus, the search of the RV could not have been justified by the automobile exception to the warrant requirement. *See id.* at 5–7.

The Government argues the Warrant was not required to describe the RV with the particularity argued by Defendant. *See* Dkt. 80 at 5–6. According to the Government, search warrants are interpreted using common sense, and "a common sense reading of the warrant and affidavit includes the RV in the explicit language of property to be searched." *See id.* at 6, 8. The Government argues that because the Warrant included the RV as a place to be searched, the Government was not required to rely on the automobile exception to search the RV. *See id.* at 7. Alternatively, the Government argues that it was reasonable for the officers to believe the Warrant authorized a search of the RV. *See id.* at 8–9. Accordingly, the Government contends the good-faith exception to the exclusionary rule prevents suppression. *See id.*

Defendant's reply brief argues the good-faith exception does not apply because the Warrant "treats the RV as one of the vehicles listed on or about the premises." *See* Dkt. 85 at 3. Defendant, instead, maintains that the application of the automobile exception controls the disposition of the Motion. *See id.* Defendant cites three cases in support of his argument: *California v. Carney*, 471

5

U.S. 386 (1985); *United States v. Holleman*, 743 F.3d 1152 (8th Cir. 2014); and *United States v. Ervin*, 907 F.2d 1534 (5th Cir. 1990). *See id.*

During the Hearing, the Court questioned Defendant regarding the applicability of the good-faith exception. Defendant argued that the good-faith exception does not apply because the RV was not just a vehicle located on the property, but rather was Defendant's residence. Defendant reiterated his position that this case is controlled by *California v. Carney*.

### B. The Automobile Exception

Defendant argued both in his briefing and during oral argument that the automobile exception does not apply in this case and, therefore, cannot justify the search of the RV. Defendant's arguments are misplaced. Because the Government does not contend it searched the RV pursuant to the automobile exception, the automobile exception has no bearing on the issues pending before the Court. *See United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016) (the automobile exception may be raised by the Government to justify a warrantless search of a vehicle). Nonetheless, the Court explains why the automobile exception does not impact the Court's analysis.

The automobile exception permits the warrantless search of an automobile if the officer has probable cause to search the vehicle. *Beene*, 818 F.3d at 164. The exception is justified by the "mobility of vehicles and occupants' reduced expectations of privacy while traveling on public roads." *Id.* at 164 (citing *Carney*, 471 U.S. at 392–93). Where an automobile is parked within a home's curtilage, however, officers may perform a warrantless search only if they have probable cause to do so and if exigent circumstances exist to justify the search. *United States v. Leon*, 843 F. App'x 628, 629 (5th Cir. 2021) (per curiam) (citing *Beene*, 818 F.3d at 164); *see generally*

6

*Collins v. Virginia*, 138 S. Ct. 1663 (2018) (holding the automobile exception, alone, does not justify a warrantless intrusion into a home or its curtilage).

The United States Supreme Court discussed the scope of the automobile exception in *California v. Carney*. In *Carney*, police officers performed a warrantless search of a motor home based on probable cause. *See Carney,* 471 U.S. at 388. The defendant subsequently moved to suppress all evidence seized from the motor home; the motion was denied by the trial court and upheld by the intermediate appellate court under the automobile exception. *Id.* at 388–89. The California Supreme Court reversed, holding that "the expectations of privacy in a motor home are more like those in a dwelling than in an automobile because the primary function of motor homes is not to provide transportation but to 'provide the occupant with living quarters.'" *See id.* at 389. The United States Supreme Court disagreed, holding the application of the automobile exception does not turn on "the other uses to which a vehicle might be put." *See id.* at 394. The Court noted: "In our increasingly mobile society, many vehicles used for transportation can be and are being used not only for transportation but for shelter, *i.e.*, as a 'home' or 'residence.'" *See id.* at 393. And "to fail to apply the exception to vehicles such as motor homes ignores the fact that a motor home lends itself easily to use as an instrument of illicit drug traffic and other illegal activity." *See id.* at 393–94. Instead, the Court instructed that the automobile exception turns only on the ready mobility of a vehicle and its presence in a setting that objectively indicates that it is being used for transportation. *See id.* at 394. Implicit in the Court's holding is the principle that motor homes do not retain heightened Fourth Amendment protection based on the fact that they could be used as a residence.

The other two cases cited by Defendant exemplify the rule set forth in *Carney*. *See Holleman*, 743 F.3d at 1158–59 (affirming the application of the automobile exception to a dog

7

sniff of a truck parked in a hotel parking lot because the truck was readily mobile and not parked in a place regularly used for residential purposes (i.e., a home or its curtilage)); *Ervin*, 907 F.2d at 1538 (holding the defendant's trailer "falls squarely under *Carney*: (1) it was not parked in a place regularly used for residential purposes but in a motel parking lot; (2) [the defendant] and his wife were not occupying the trailer as a home; and (3) it was readily mobile."). Importantly, *Carney* and its progeny do not stand for the principle that the expectation of privacy in a vehicle is lessened if the vehicle is not being used as a residence, as argued by Defendant. *See* Dkt. 85 at 3; *Carney*, 471 U.S. at 393 (the expectation of privacy in a vehicle is diminished, generally, because the vehicle is "subject to a range of police regulation inapplicable to a fixed dwelling").

In this case, Defendant alleges the RV was "completely immobile" and in a fixed position near the House. *See* Dkt. 85 at 4. Assuming those facts are true, the Court agrees that the automobile exception would not have justified a warrantless search of the RV, as a vehicle's ready mobility is key to the exception's application. *See, e.g., Carney*, 471 U.S. at 394. However, in this case, the Government contends it searched the RV pursuant to the Warrant—not pursuant to the automobile exception. Because the Government did not rely on the automobile exception to search the RV, the Court need not consider whether the exception applies to resolve the issues pending before the Court. Instead, the Court looks to the scope of the Warrant and whether, in light of the Warrant, the search of the RV was reasonable.

### C. Scope of the Warrant

The Court finds the RV was within the scope of the Warrant, as the Affidavit and Warrant identified the RV as a place to be searched. *See* Dkt. 85-1 at 1 (Warrant incorporating Affidavit by reference); Dkt. 85-1 at 4 (Affidavit identifying RV). It is not dispositive, as Defendant argues, that the Warrant does not describe the RV with heightened specificity or that the RV was connected

8

to utility lines and used as a residence. For example, in *United States v. Babin*, the Fifth Circuit held that a warrant, which authorized the search of a house and its premises, "also authorized a search of a detached shed on that premises," even though the shed was not identified in the warrant and was used as a residence. *See United States v. Babin*, 817 F. App'x 23, 25 (5th Cir. 2020) (per curiam). In *Babin*, as in this case, the shed was located "about 30–50 feet behind the main dwelling," lacked a mailbox, was not fenced off from the main dwelling, and shared an address with the main dwelling. *See id.* at 24; *United States v. Babin*, No. 19-42, 2019 WL 3206838, at *1 (M.D. La. July 16, 2019), *affirmed*, 817 F. App'x 23 (5th Cir. 2020). Because the shed was used as a residence, the defendant argued it retained heightened Fourth Amendment protection. *See Babin*, 817 F. App'x at 24. The Fifth Circuit disagreed, and on *de novo* review, affirmed the district court's denial of the suppression motion. *See id.* at 24–25. According to the court, because officers were authorized to search the home and its premises, they were authorized to search a shed on that premises. *See id.* at 25.

In *United States v. Houck*, the Eighth Circuit upheld the search of an RV parked on the premises because the warrant authorized a search of the residential dwelling and any vehicles "present at the time of execution . . . due to the size and portability of [the contraband]." *See United States v. Houck*, 888 F.3d 957, 958, 961 (8th Cir. 2018). In *Houck*, the RV was not identified in the warrant. *See id.* at 958. As in this case, that RV was parked on the property to be searched (in that case, the driveway), was used as a residence by the homeowner's family, and was connected to utility lines. *See id.* at 958, 961. The Eighth Circuit nonetheless held that it was reasonable for the officers to believe the RV was within the scope of the warrant, as the warrant authorized a search of all vehicles present at the time of execution. *See id.* at 960–61.

Likewise, in *United States v. Napoli*, the Fifth Circuit upheld a search of a camper, which was not identified in the warrant but was parked on the premises of a residential address. *See United States v. Napoli*, 530 F.2d 1198, 1200–01 (5th Cir. 1976). In that case, officers obtained a warrant to search "the premises known as 3027 Napoleon Avenue" for narcotics. *See id.* at 1199–1200. The court noted the narcotics were "moveable contraband" and it was not "known or knowable in advance" where the narcotics were stored. *See id* at 1201. The court further noted the officers' intention of seizing the contraband wherever it might be on the premises, whether "inside the house, retained on the front porch, carried down the steps to the sidewalk, taken to the yard, or removed to an outbuilding or to a vehicle on the premises." *See id.* at 1200–01. The court held, accordingly, the warrant's authorization to search the premises of the home was sufficient to include the camper parked in the home's driveway. *See id.*

*Babin*, *Houck*, and *Napoli* show that a warrant to search a residential home may also authorize the search of unidentified vehicles or outbuildings located on the property. In this case, however, the RV *is* identified in the Warrant as a place to be searched, along with the House and other vehicles parked on the property. *See* Dkt. 85-1 at 1, 4. And any argument that the RV's use as a residence required officers to obtain a separate warrant is foreclosed by *Babin* and *Houck*. Accordingly, the Court finds the RV was within the scope of the Warrant.

### D. Good-Faith Exception

Even if the RV was outside the scope of the Warrant, the Motion should be denied under the good-faith exception to the exclusionary rule. The good-faith exception was borne from the principle that not every Fourth Amendment violation justifies the suppression of evidence. *See United States v. Ganzer*, 922 F.3d 579, 584–85 (5th Cir. 2019). Because the exclusionary rule exists to deter police misconduct, it "cannot be expected, and should not be applied, to deter

objectively reasonable law enforcement activity." *Id.* at 585 (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). Hence, if an officer conducts a search in good-faith reliance—that is, objectively reasonable reliance—on a warrant, the good-faith exception precludes the court from suppressing the evidentiary fruit of the search. *Id.*

The good-faith exception applies unless: (1) in issuing the warrant, the judge was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the issuing judge "wholly abandoned his judicial role" in that no "reasonably well trained officer should rely on the warrant"; (3) the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was facially invalid. *Babin*, 817 F. App'x at 25 (quoting *United States v. Gibbs*, 421 F.3d 352, 355 (5th Cir. 2005)). Here, none of the foregoing apply. Defendant argues that Officer Kennedy and others knew the RV was a separate residence from the House. *See* Dkt. 85 at 3–4. According to Defendant, in 2018, Cooke County police officers, including Officer Kennedy:

> executed a search warrant on the exact property involved in this dispute and attempted to enter the RV . . . . [Defendant] demanded that the officers show him a warrant for his RV, and the officers relented, knowing that their warrant did not include any probable cause to search his home.

*See id.* at 3–4. However, Officer Kennedy testified he did not believe the RV was a separate residence and that he had not, in the past, attempted to search the RV.

The Court finds the officers reasonably relied on the Warrant in conducting a search of the RV. Under the good-faith exception, the officers were permitted to rely on the Warrant in light of the information available to them at the time of execution. *See Maryland v. Garrison*, 480 U.S. 79, 85 (1987). In 1987, the United States Supreme Court applied the good-faith exception to prevent the suppression of evidence, even though it found law enforcement searched a third-party

11

residence in reliance on an overbroad warrant. *See id.* at 88. In *Garrison*, officers obtained a warrant to search the third floor of a building, believing the target apartment comprised the entire floor when, in fact, the floor was bifurcated into two apartments. *Id.* at 81–82, 85. When officers arrived on the third floor, the doors to each apartment were open, leading officers to believe the entire floor was, in fact, one apartment. *Id.* at 81. Officers then seized contraband from the non-target, third-party apartment, which the defendant sought to suppress. *Id.* The United States Supreme Court applied the good-faith exception, holding that it was not objectively unreasonable for the officers to search both apartments because the apartments, at the time of execution, appeared to be one and the warrant—albeit mistakenly—authorized a search of the entire floor. *Id.* at 88.

Likewise, in *Houck*, the Eighth Circuit applied the good-faith exception to a search of the defendant's RV because the warrant authorized a search of the residential dwelling and any vehicles "present at the time of execution." *See Houck*, 888 F.3d at 958, 961. In that case, even though the RV was used as a residence by the homeowner's family and connected to utility lines, the court held it was reasonable for the officers to believe the RV was a vehicle present at the time of execution and, thus, within the scope of the Warrant. *See id.* at 960–61. According to the court, the officers, at most, made an honest mistake in searching the RV; it noted the law provides "latitude for honest mistakes that are made by officers in the dangerous and difficult process of . . . executing search warrants." *See id.* (quoting *Garrison*, 480 U.S. at 87).

In this case, Officer Kennedy testified that, upon execution, there was no indicator that the RV was a separate residence from the House, and further, he believed the RV and House were part of the same property. Officer Kennedy noted the RV did not have its own mailbox, address, or driveway; the RV was parked approximately thirty (30) feet from the House and was not fenced

12

off or otherwise separated from the House; there were no signs surrounding the RV to prohibit entry or trespass from the House; the House contained mail addressed to Defendant; and finally, Defendant, along with his sister, owned both the House and the RV. In light of these circumstances, it was not objectively unreasonable for the officers to search the RV, even though the RV was used as a residence and connected to utility lines. *See Garrison*, 480 U.S. at 88 (applying the good-faith exception to a search of an apartment separate from that identified in the warrant); *Babin*, 817 F. App'x at 25 (affirming the district court's application of the good-faith exception to a search of a shed that was used as a residence); *Houck*, 888 F.3d at 960–61 (applying good-faith exception to the search of an RV that was used as a residence). There is no indication the officers should have perceived, or did perceive, the RV to be a separate residence unassociated with the House given that Defendant co-owned the entire property and received mail at the House. At worst, the Court finds the officers made an honest mistake, which the exclusionary rule does not aim to punish. *See Garrison*, 480 U.S. at 88; *Houck*, 888 F.3d at 960–61; *Ganzer*, 922 F.3d at 585. Accordingly, the good-faith exception applies, and Defendant's Motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion (Dkt. 78) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report

shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 16th day of March, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE